Filed 10/11/24  P. v. Trillo CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C099574 |
| Plaintiff and Respondent, | (Super. Ct. No. CR024347) |
| v. | |
| PEDRO ARAIZA TRILLO, | |
| Defendant and Appellant. | |

In 2003, the trial court sentenced defendant Pedro Araiza Trillo to an aggregate term of 32 years to life, which included two prior prison term enhancements and a prior serious felony conviction enhancement.  The trial court recalled defendant's sentence

pursuant to Penal Code[1] section 1172.75[2] and resentenced him. It struck the prior prison term enhancements and left the sentence otherwise unchanged.

On appeal, defendant contends the trial court erred in failing to dismiss the prior serious felony enhancement under the amendments to section 1385 made by Senate Bill No. 81. (2021-2022 Reg. Sess.) Defendant claims the trial court erred in finding that dismissal of the enhancement would endanger public safety, thus the trial court was required to dismiss the enhancement in the interest of justice because there were three enumerated mitigating circumstances. Defendant also contends the matter must be remanded for the trial court to calculate custody credits as of the date of the resentencing hearing. The People agree. We will remand for the limited purpose of recalculation of custody credits and otherwise affirm the judgment.

## BACKGROUND

In July 2002, defendant kept lookout while his brother, and codefendant, slashed the tires of at least 11 automobiles parked at an apartment complex. Confronted by residents of the complex, both defendants threatened the residents with knives. When police officers arrived, defendants fled. When one officer attempted to stop defendant, defendant tried to walk away and did not stop until the officer got out of his car and grabbed defendant. (*People v. Trillo* (Mar. 16, 2005, C043958) [nonpub. opn.].)

A jury convicted defendant of assault with a deadly weapon (§ 245, subd. (a)(1)) and misdemeanor resisting arrest (§ 148, subd. (a)(1)). In bifurcated proceedings, the trial court found true the enhancement allegations defendant sustained two prior serious

---

[1] Undesignated statutory references are to the Penal Code.

[2] In the underlying proceedings, the parties and the court cited section 1171.1. Effective June 30, 2022, the Legislature renumbered this section to 1172.75 with no substantive changes to the statute. (Stats. 2022, ch. 58, § 12.) For ease of reference, we cite to section 1172.75 throughout this opinion.

2

felony convictions (§§ 667, subds. (a), (b)-(i), 1170.12) and served two prior prison terms (§ 667.5, subd. (b)). The trial court denied defendant's *Romero*[3] motion. The trial court sentenced defendant to 25 years to life for the assault with a deadly weapon conviction, plus five years for the prior serious felony enhancement, and one year for each of the two prior prison term enhancements, for an aggregate term of 32 years to life. On appeal, this court remanded the matter for resentencing to include a sentence on the resisting arrest conviction and correction of the minute order. (*People v. Trillo* (Mar. 16, 2005, C043958) [nonpub. opn.].)

In August 2022, after the Legislature enacted section 1172.75, the trial court scheduled a resentencing hearing and notified the parties.

Defendant filed a resentencing brief that argued the trial court was required to recall his sentence, strike the now invalid prison prior enhancements, and conduct a full resentencing. Defendant argued that under section 1385, the trial court should strike the prior strike conviction based on a 1985 first degree burglary conviction. Defendant argued the prior strike was remote in time, occurring 17 years before the current offense; he was only 20 years old at the time he committed the offense; he was not the principal; and the prior strike was related to substance abuse. Defendant attached the probation report from the 1985 prior strike which noted defendant presented as "culturally and intellectually limited." The probation officer recommended the trial court make an unusual case finding and grant defendant probation, because he was youthful at the time of the offense, had no significant prior record, and had a limited role in the offense, standing outside the house acting as a lookout. Defendant's resentencing brief also included a social history prepared by a mitigation specialist from the public defender's office that indicated defendant had a learning disability. Defendant argued the mitigating

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

factors in section 1385, subdivision (c), while not controlling, were relevant to the determination of whether to strike the prior strike. Defendant did not argue the prior serious felony enhancement should be stricken under section 1385, subdivision (c).

The People's resentencing brief agreed that defendant's prior prison term enhancements had to be stricken and defendant was entitled to a full resentencing under sections 1172.75 and 1385, but argued the trial court should strike only the prior prison term enhancements. The People argued under section 1385, subdivision (c) that dismissing enhancements beyond the prison priors would endanger public safety and that with such a finding, the court did not need to consider the mitigating circumstances listed in section 1385, subdivision (c). They argued "[s]triking all the enhancements and the prior strike" would result in defendant's immediate release and was likely to "result in physical injury or other serious danger to others. (§ 1385(c)(2).)" The People attached as exhibits to their brief, the transcript from a July 2022 parole hearing and the comprehensive risk assessment prepared for that parole hearing.

The comprehensive risk assessment determined defendant was a high risk of future violence. The assessment noted defendant had some learning challenges and may have had an attention deficit/hyperactivity disorder but had not been diagnosed with a learning disability. The assessment recounted defendant's criminal history which included multiple convictions for fighting, drug related offenses, and domestic violence. Defendant had multiple parole and probation violations, which included committing additional offenses while on parole or probation and ongoing drug use. He committed the current offense while on parole. While incarcerated he received a rule violation for a 2020 battery with a deadly weapon on an inmate. He committed the battery because of his association with a gang. Prior to 2020, he had multiple rule violations including possession of contraband, use of controlled substances, promoting gang activity, battery on an inmate with a weapon likely to result in serious bodily injury, and sexual misconduct in the presence of an officer. He also received several counseling chronos.

4

Defendant also had a significant history of substance abuse, including alcohol, marijuana, methamphetamine, and opioids, and continued to use drugs in prison. He did not attend substance abuse treatment when released in the community. While in prison, he enrolled in several substance abuse groups while incarcerated in 2017 but stopped attending in 2019 and had not returned. He stated he had not attempted to attend since 2019, because he "didn't care about that. Cared more about getting high." He also did not believe his alcohol or drug use increased his violence, despite the fact that he was under the influence of alcohol during the commitment offense and at least one prior assault.

Defendant planned to live with a niece if released. He did not have a plan for work, but stated he would try to find something. While he did not know exactly what would be different if he were on parole, he stated he wanted to change, he was tired and too old to continue this behavior. He did not have a substance abuse relapse prevention plan, could not identify triggers for past use or what caused past relapses. He was vague in identifying past causes of his violence, but stated he would not let people run over him, or push his buttons, and does not like people telling him what to do. He was interested in mental health treatment to help him build some skills to manage stress and anger.

The evaluating psychologist noted defendant lacked self-awareness of his past violence, current violence risk or factors that influenced his poor decision-making and lacked motivation for treatment, particularly as to his substance abuse. The psychologist acknowledged defendant had several chronic medical conditions and, as these conditions worsened, they could mitigate his potential for violence. The psychologist also noted these medical conditions did not appear to currently be mitigating his violence, as he used parts of his walker to commit an assault in 2020.

Defendant refused to attend his July 2022 parole hearing and refused to speak to his attorney. The Board of Parole Hearings (Board) recounted defendant had an early onset of criminality, starting at age 13, and committed multiple crimes with short

5

intervals in between and the crimes escalated in seriousness. Defendant's criminal conduct continued as an adult, with convictions for assaults and possession of a controlled substance. Defendant also had several parole violations. Defendant also had some serious misconduct that reflected continued violence, lack of impulse and behavioral control, and lack of respect for rules and laws. Defendant had approximately 15 rule violations, two involving violence and one gang related. The most recent rule violation was in 2020 for a battery with a deadly weapon. Defendant had several rule violations related to substance abuse. The Board noted defendant committed crimes while using substances and associating with negative peers who engaged in criminal conduct and/or substance abuse and this conduct continued in prison. This history included the commitment offense, which he committed while under the influence of alcohol. Defendant engaged in very little programming to address his risk factors such as anger management, criminal thinking, and gang involvement. Based on this record, the Board denied defendant parole for five years, finding he posed an unreasonable risk to public safety.

In defendant's reply to the People's resentencing memo, defendant set forth several systemic flaws, which he claimed rendered the risk assessment and parole decision unreliable evidence of current dangerousness. Defendant listed his serious rule violations and included copies of some of the specific reports. Defendant also argued he suffered from a variety of serious physical health conditions, including hepatitis C, end stage liver disease, esophageal varices, a platelet disorder, atrial fibrillation, diabetes, and hypertension. Defendant claimed these combined conditions made him medically high risk.

At the resentencing hearing, defendant asked the court to strike his 1985 prior strike conviction. He argued he was young at the time of the offense and acted only as a lookout. He noted the probation officer found it was an unusual case, as he had limited intellectual abilities, and was solicited to participate, as opposed to planning the burglary.

Defendant noted his limited cognition, which had also limited his participation in the 2022 parole hearing. Defendant argued he had been bullied by his brother, and in the current case, they had been drinking. While his brother was slashing tires, defendant acted as a lookout, so his role was limited, and no one was hurt during the offense. Defendant also set forth his medical conditions. Defendant noted the risk assessment done by the Department of Corrections and Rehabilitation (CDCR) differed from the risk assessment done by the psychologist for the parole hearing, and CDCR's assessment showed defendant was a low risk. Defendant argued he could be safely released, and the court should strike the 1985 strike conviction.

The public defender's mitigation specialist also spoke at the resentencing hearing. She stated given defendant's medical conditions and needs, CDCR was not meeting his needs and he would be able to access services in the community if he were resentenced and released. She also indicated their office, and his family would support his reentry.

In supplemental briefing, defendant argued the denial of parole did not provide evidence of current dangerousness and based on his test of adult basic education score he should have received an Americans with Disabilities Act accommodation during the comprehensive risk assessment. He argued his low cognitive ability limited his ability to discuss essential issues and understand the parole process and questioning, and demonstrated why the comprehensive risk assessment and parole hearing should not be relied on as evidence of current dangerousness.

The trial court took the matter under submission. In issuing its ruling, the trial court set forth the standard governing the grant of a motion to dismiss a prior strike. The court reviewed all the briefing and documents submitted by the parties. The court acknowledged defendant's background, developmental disabilities, and cognitive deficit. Defendant started using drugs and alcohol in his teens and began committing crimes as a youth, prompted by substance abuse and negative relationships. The court recounted defendant's criminal history. As to the current offense, defendant was 37 years old, on

parole, and a serious drug and alcohol abuser. His brother, who bullied him, was the primary actor and defendant acted as a lookout. As to the 1985 prior strike, defendant was 20 years old and agreed to be a lookout while another person burglarized a home to fund their drug habit. He was granted probation as to that offense. Then he committed another strike in 1994 when he used a two-by-four to assault a man, while he was intoxicated. Defendant also had criminal convictions for domestic violence and drug and alcohol use, and multiple parole violations.

Defendant's institutional behavior reflected violent offenses, including a 2007 assault with a knife and a 2020 battery of an inmate with a metal rod from his walker, and repeated use of controlled substances and promoting gang activity. He did not participate in any self-help programming, aside from two years in Narcotics and Alcoholics Anonymous, and completed no vocational training. Defendant did not recognize triggers for his substance abuse or understand its contribution to the commitment offense and had no plan to prevent relapse. The court also acknowledged defendant had serious health issues and upon release he would likely live in a skilled nursing facility.

The court noted defendant had spent most of his life incarcerated and some of the crimes he has committed were "extremely violent, chasing and threatening a person with an extended knife, a beating with a two-by-four," an assault with a knife while in prison, and a more recent battery with a metal rod. Defendant had a history of substance abuse and negative peer associations and expressed no interest in positive programming.

The court concluded that defendant had become more violent in prison and had no coping mechanisms. Despite his severe health problems, the court could not find defendant was no longer a risk to public safety. The court concluded defendant "is a violent individual, and if he were released, . . . it is likely that he'd continue substance abuse, but more importantly, he'd be engaging in more violent behavior. Whether or not that's at a skilled nursing facility, a board and care, or some other post release location, that violence would occur and that would occur likely once his buttons were being

8

pushed.  [¶]  And so in reviewing the entire record before the Court in this matter, the Court finds it is not in the interest of justice to dismiss the 1985 first degree burglary, and I would deny defendant's motion on that request."  The court struck the two prison priors and reaffirmed the sentence in all other respects:  25 years to life on the assault with a deadly weapon, and five years consecutive for the prior serious felony enhancement.  The court then indicated the CDCR would recalculate the custody credits.

## DISCUSSION

### I

*Dismissal of Enhancement Under Section 1385*

Defendant contends the trial court erred in failing to dismiss the prior serious felony enhancement under the amendments to section 1385, subdivision (c).  Defendant argues the finding that dismissal of the enhancement would endanger public safety was not supported, thus the trial court was required to dismiss the enhancement in the interest of justice because there were three enumerated mitigating circumstances.  The People argue defendant's claim is forfeited as he did not ask the court to strike his prior serious felony enhancement and defendant has failed to show an abuse of discretion.

*Legal Background*

"In 2021, the Legislature enacted Senate Bill No. 81 (2021-2022 Reg. Sess.) (Sen. Bill No. 81), which amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice.  (Stats. 2021, ch. 721, § 1.)"  (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.)  Subdivision (c)(1) of section 1385 as amended provides:  "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  Subdivision (c)(2) of section 1385 provides in relevant part:  "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in

9

subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  The pertinent factors here are: application of the enhancement could result in a sentence of over 20 years (§ 1385, subd. (c)(2)(C)); the current offense is not a violent felony (§ 1385, subd. (c)(2)(F)); and the enhancement is over five years old (§ 1385, subd. (c)(2)(H).).

*Forfeiture*

Preliminarily, the People argue defendant forfeited this claim by failing to seek dismissal of the prior serious felony enhancement.  Defendant argues defense counsel's statement that in addition to the prior strike, defendant had seven years of enhancements was sufficient to raise the issue in the context of a full resentencing hearing.  Defendant also notes the People's resentencing brief, explicitly discussed striking all the enhancements and the strike.  We note the People's resentencing brief explicitly argued under section 1385, subdivision (c) that dismissing enhancements beyond the prison priors would endanger public safety and that with such a finding, the court did not need to consider the mitigating circumstances listed in section 1385, subdivision (c).  On this record, and to forestall a claim of ineffective assistance of counsel, we will exercise our discretion to reach the merits of defendant's claim.  (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [an appellate court has authority to reach a forfeited claim]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments].)

*Abuse of Discretion*

We review the trial court's refusal to dismiss an enhancement under section 1385 for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 373-374.)  An abuse of discretion may occur where the trial court is not aware of its discretion, considers

impermissible factors, fails to consider relevant factors; or where the decision is so irrational or arbitrary, no reasonable person could agree with it. (*Id*. at pp. 377, 378.) "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

The trial court resentenced defendant on September 21, 2023, some 20 months after the amendments to section 1385, subdivision (c) became effective. The People also explicitly argued under section 1385, subdivision (c) that dismissing enhancements beyond the prison priors would endanger public safety and that with such a finding, the court did not need to consider the mitigating circumstances listed in section 1385, subdivision (c). The trial court understood it could dismiss the prior serious felony enhancement and the scope of its discretion in doing so.

The trial court considered the documentary evidence, including: the prior probation report, defendant's social history report, the submitted CDCR records, the parole hearing, and the comprehensive risk assessment. The court acknowledged defendant's age, poor health, cognitive deficits, and family history. The court also acknowledged defendant's youth at the time of the 1985 prior serious felony conviction and his limited role in both that prior conviction and the current offense.

The trial court also considered defendant's lengthy criminal history, and long-term alcohol and substance abuse, which also served as a catalyst for his criminal conduct. Defendant's criminal record included significant acts of violence both while incarcerated and while released on parole. While on parole, he committed an assault with a two-by-four and domestic violence. He committed the current offense while on parole. While incarcerated, he committed an assault with a knife and a battery with a deadly weapon, this last offense as recently as 2020. Despite being intoxicated when he committed some of these offenses, he did not believe alcohol or drug use contributed to his violent behavior. He also continued to use and possess alcohol and drugs while in prison. He briefly participated in programming to address his alcohol and substance abuse problems

11

but did not commit to the program. And, he had no plan to prevent a substance abuse relapse. The evaluating psychologist concluded defendant was at high risk of committing future violence.

Based on its review and consideration of the evidence and arguments, the trial court concluded defendant was a violent individual, likely to continue his substance abuse and engage in more violent behavior if he were released. We interpret these statements as an implied finding by the trial court that dismissal of the enhancement would endanger public safety. The record supports this conclusion. The trial court understood its discretion, considered the relevant factors, and on the record before us, we cannot conclude its finding is so irrational or arbitrary that no reasonable person could agree with it.

## II

### Custody Credit Calculation

We agree with the parties that the trial court erred by failing to recalculate defendant's custody credits upon resentencing. When a defendant has served a portion of a sentence imposed based upon a judgment which is subsequently modified during the term of imprisonment, the time served "shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act . . . ." (§ 2900.1.) When a defendant is resentenced, all actual time spent in custody, whether in jail or prison, should be credited against the modified sentence, and such credit should be reflected in the amended abstract of judgment. (See *People v. Buckhalter* (2001) 26 Cal.4th 20, 37, 41.) At resentencing, the trial court did not recalculate defendant's custody credits, but deferred the calculation to CDCR. Accordingly, we will remand for recalculation of defendant's custody credits for the period between defendant's initial sentencing and resentencing.

12

DISPOSITION

The matter is remanded for the limited purpose of recalculating the actual days of credit for which defendant is entitled. The trial court is directed to prepare an amended abstract of judgment setting forth the modified credits and to forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

_____/s/_____
WISEMAN, J.*

We concur:

_____/s/_____
HULL, Acting P. J.

_____/s/_____
BOULWARE EURIE, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.